## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MAINE FOUNDATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:20-CV-00422-JAW |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | ) ) ) | |
| Defendant. | ) ) | |

### JOINT STATUS REPORT IDENTIFYING ISSUES FOR RESOLUTION AND PROPOSING A SCHEDULE FOR PROCEEDING

Pursuant to the Court's Procedural Order of January 19, 2021 (ECF No. 12), Plaintiff American Civil Liberties Union of Maine Foundation ("Plaintiff" or "ACLU of Maine") and Defendant United States Citizenship and Immigration Services ("USCIS" or "Defendant" and, together with Plaintiff, the "Parties") submit the following Joint Status Report:

1.    Plaintiff sent a request to USCIS pursuant to the Freedom of Information Act ("FOIA") on July 12, 2019 (the "Request"), a true and correct copy of which is attached to Plaintiff's Complaint as Exhibit A (ECF No. 1-1).

2.    On November 11, 2020, Plaintiff filed the instant lawsuit against USCIS, asserting two counts under the FOIA: (1) Count I alleges a failure by USCIS to provide a determination within 20 business days, as required by 5 U.S.C. § 552(a)(6)(A)(i), and (2) Count II alleges a failure by USCIS to make the records sought in the Request "promptly available" to Plaintiff, as required by U.S.C. § 552(a)(3)(A).  *See* ECF No. 1, ¶¶ 33-38.

3.    On January 11, 2021, USCIS answered the Complaint.  ECF No. 9.

4.    Following a telephonic hearing with all counsel of record, the Court directed the parties to file a report in which they identify the issues for resolution in this case and propose a scheduling order to govern the future course of the case.  ECF No. 12.

5.      The Parties now jointly identify the following issues for resolution in this case; explain the issues regarding which the Parties have reached an agreement; and, for those issues that remain in dispute, set forth their respective positions for the Court's consideration and resolution.

6.      As an initial matter, the issues for resolution in this case include: the adequacy of the agency's search for responsive documents; the timing of review and production of responsive documents; and, once the documents are produced, resolution of disputes (if any) regarding materials withheld or redacted by the agency.

7.      As set forth in greater detail below, the Parties agree on the following issues: **(1)** a proposed schedule for review and production of the current set of documents identified by USCIS as being potentially responsive to the Request, and **(2)** a proposed timeline for resolving disputes (if any) regarding withholdings or redactions.

8.      The Parties disagree on the following issue: **(3)** whether USCIS has conducted an adequate search for documents potentially responsive to the Request and, relatedly, the timing of when the Court should review disputes about the adequacy of USCIS's search.

9.      The Parties will continue to negotiate in good faith to further narrow their disputes and will promptly alert the Court to the extent that any future agreements moot any of the issues that the Parties identify below as requiring the Court's involvement.

**Issue #1: Production Schedule for Potentially Responsive Records Currently Identified by USCIS**

10.     USCIS has informed Plaintiff that it has completed its search for records that are potentially responsive to the Request and has identified approximately 6,440 pages of records that are potentially responsive to the Request, prior to any deduplication.

11.     The Parties have agreed to the following review and production schedule for these documents, pursuant to which USCIS will undertake a monthly review of a certain agreed-upon subset of the 6,440 pages of identified records for deduplication and responsiveness.  At the end of each month, USCIS will produce to Plaintiff the responsive records from that month's subset of potentially responsive records, along with a cover letter explaining, generally, which FOIA exemptions were used as a basis for any redactions within the month's production:

January 2021:     623 pages (production of responsive documents made on February 8, 2021)

February 2021:   800 pages, with production of responsive documents by February 28, 2021

March 2021:      900 pages, with production of responsive documents by March 31, 2021

April 2021:       1600 pages, with production of responsive documents by April 30, 2021

May 2021:        1600 pages, with production of responsive documents by May 31, 2021

June 2021:        920 pages, with production of responsive documents by June 30, 2021

12.     The Parties have agreed that USCIS's consent to this production schedule does not and shall not, by itself, provide a basis for concluding that Plaintiff has "substantially prevailed" in this litigation under either 5 U.S.C. § 522 (E)(ii)(I) or 5 U.S.C. § 522 (E)(ii)(II).

**Issue #2: Disputes Regarding USCIS's Claimed Exemptions**

13.     The Parties agree that disputes (if any) regarding redactions or withholdings made by USCIS to documents responsive to the Request based on FOIA exemptions should be addressed after the conclusion of USCIS's production.

14.     The close of production for the existing set of 6,440 potentially responsive documents is currently set for June 30, 2020.  However, if the Court agrees with Plaintiff that the Parties' dispute about the adequacy of the search should be briefed at the outset (*see* Issue #3, *infra*) and, as a result of such briefing, orders that USCIS conduct additional searches that yield additional responsive documents, the close of production may be delayed to a later date.

3

15.     The Parties jointly request that the Court set a deadline for 60 days after the close of production for the filing of a joint status report that:

    (a)   identifies any remaining disputes regarding redactions/withholdings; and

    (b)   if there are any remaining disputes, proposes a schedule for proceeding, including, if necessary, deadlines for the parties to meet and confer regarding exemptions; for USCIS to provide a *Vaughn* index; and a briefing schedule.[1]

**Issue #3: Briefing on the Adequacy of USCIS's Search**

16.     Undersigned counsel for USCIS has advised Plaintiff's counsel both (a) that there are certain categories within Plaintiff's Request for which the agency has not identified any responsive documents; and (b) that certain categories within Plaintiff's Request do not trigger a search obligation by the agency because they are overly broad and would impose an undue search burden on the agency.

17.     Based on these representations by counsel and the current absence of information about the search that USCIS did perform, Plaintiff disputes that Defendant has satisfied its burden to show that it has conducted an adequate search for records that are responsive to the Request.

---

[1] Defendant takes the position that any such briefing would be conducted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56 based on overwhelming authority establishing that summary judgment is the proper vehicle for resolving FOIA cases, including disputes about exemptions.  *See, e.g., Am. Civil Liberties Union Found., Inc. v. U.S. Dep't of Educ.*, 320 F. Supp. 3d 270, 276 (D. Mass. 2018) (noting that "FOIA cases are typically decided on motions for summary judgment" and analyzing the government's claimed exemptions under the framework of Rule 56); *Georgacarakos v. F.B.I.*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) ("FOIA cases typically and appropriately are decided on motions for summary judgment," and explaining that an agency is entitled to summary judgment in the face of disputes about redactions if the agency's supporting declarations are "relatively detailed" and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." (internal quotations marks omitted)).

The Plaintiff currently takes no position regarding the type of briefing that will be most appropriate for resolving disputes over redactions and withholdings, but notes that, in prior FOIA cases, this Court has ordered legal briefing outside of the traditional summary judgment process, consistent with the parties' proposals in those cases. *See* Order, *ACLU of Maine v. U.S. Dep't of Homeland Security*, Docket No. 18-182-JDL, ECF No. 40 (D. Me. Oct. 15, 2019) (ordering legal briefing on redactions outside the summary judgment process); Order, *ACLU of Maine v. U.S. Dep't of Homeland Security*, Docket No. 18-176-JDL, ECF No. 24 (D. Me. Jan. 7, 2019) (same).

Defendant denies that assertion; maintains that it has conducted an adequate search, as required by FOIA; and is prepared to meet its burden to establish adequacy at the appropriate time, which is at the summary judgment stage following the close of production.

18.   The Parties disagree as to when the Court should resolve their dispute about the adequacy of USCIS's search.  As discussed in further detail below, it is the Plaintiff's position that such briefing on the Parties' only known dispute should take place promptly.  Defendant takes the position that such briefing should occur after the close of production at the summary judgment stage, at the same time the Parties brief their disputes about redactions and withholdings.

***Defendant's Position***

19.   USCIS believes that any challenges to the adequacy of the search should be addressed at the summary judgment stage, at the same time the Court addresses remaining disputes between the Parties regarding redactions/withholdings (which, as set forth above, the Parties agree should not be addressed until after the completion of USCIS's production in June 2021).

20.   As used in FOIA, "search" means "to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request."  5 U.S.C. § 522(a)(3)(D).

21.   According to the U.S. Court of Appeals for the First Circuit (the "First Circuit"), FOIA requires an agency to conduct an adequate search, with adequacy "determined not by 'whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 254 (1st Cir. 2013) (citing *Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993)).

5

22.    Additionally, FOIA does not require agencies to conduct "unreasonably burdensome" searches for records.  *See, e.g.*, *Dixon v. U.S. Dep't of Justice*, 279 F. Supp. 3d 1, 2 (D.D.C. 2017) ("Where . . . an agency's response to a FOIA request calls for an unreasonably burdensome search, . . . the agency need not honor the request.") (internal citations and quotation marks omitted), *aff'd*, 2018 WL 4610736 (D.C. Cir. 2018); *Van Strum v. EPA*, Nos. 91-35404, 91-35577, 1992 WL 197660, at *1 (9th Cir. Aug. 17, 1992) (affirming propriety of agency's denial of overly broad FOIA requests because an agency is not required to conduct a search that "would place inordinate burden on agency resources").

23.    Pursuant to FOIA, USCIS "bears the initial burden of showing that it conducted an adequate search," a burden that it can meet by submitting one or more affidavits in support of a summary judgment motion that "describ[es] the search it conducted in response to the plaintiff's request." *Moffat*, 716 F.3d at 254.  "If an agency fails to establish through reasonably detailed affidavits that its search was reasonable, the FOIA requester may avert summary judgment merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search." *Maynard*, 986 F.2d at 560.  "However, if an agency demonstrates that it has conducted a reasonably thorough search, the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." *Id.* (further explaining that an agency's affidavit is "accorded a presumption of good faith, which cannot be rebutted by purely

speculative claims about the existence and discoverability of other documents" (internal quotation marks omitted)).

24. Based on this well-established authority from the First Circuit, it is clear that the proper avenue for litigating disputes regarding the adequacy of USCIS's search is a summary judgment motion. As noted above, the Parties have already agreed that a briefing schedule may be needed after the conclusion of USCIS's production of responsive documents to address unresolved disputes between the Parties regarding the agency's claimed exemptions. As explained in Footnote 1, *infra*, such briefing should proceed pursuant to the normal summary judgment framework. There is no good reason, under FOIA or otherwise, to hold multiple rounds of summary judgment briefing, particularly given the extensive processes required for such motions by Federal Rule of Civil Procedure 56 and Local Rule 56. Doing so would only serve to waste the limited resources of the Parties and the Court by addressing the Parties' disputes in a piecemeal and inefficient fashion. *See, e.g.*, *Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961) (generally disapproving successive summary judgment motions); *Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1021 (S.D. Ohio 2007) ("Parties are generally expected to set forth all their arguments in support of summary judgment in a single dispositive motion; piecemeal litigation at the summary-judgment stage is disfavored."). *Accord* Fed. R. Civ. P. 1 (explaining that the Federal Rules of Civil Procedure should "be construed,

administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").[2]

25.   To be clear, Defendant agrees with Plaintiff that it bears the burden of establishing the adequacy of USCIS's search under FOIA. *Moffat*, 716 F.3d at 254. But, although Plaintiff laments the current lack of information from the agency about its search, the case law cited above establishes that the appropriate time and method for the agency to provide such information and meet its burden on adequacy is through the introduction of affidavits in support of a summary judgment motion after the close of production. *See Moffat*, 716 F.3d at 254; *Maynard*, 986 F.2d at 559. Indeed, only then would the Court be able to consider whether it might be appropriate to permit formal discovery of information about the agency's search that is not addressed by its affidavits. *See, e.g.*, *Miscavige v. I.R.S.*, 2 F.3d 366, 369 (11th Cir. 1993) ("[g]enerally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified"); *Mullen v. U.S. Army Crim. Investigation Command*, No. 10- 262, 2011 WL 5870550, at *3-4 (E.D. Va. Nov. 22, 2011) (recognizing that, "[a]bsent unusual

---

[2] Plaintiff argues that other FOIA cases that the ACLU of Maine has litigated before this Court provide precedent for addressing the adequacy of the search at the outset, citing to Docket Nos. 18-176 and 18-182, two FOIA cases brought by Plaintiff against federal agencies other than USCIS. A review of the dockets in those cases confirms that the defendant federal agencies *voluntarily* agreed to provide the ACLU of Maine with certain information regarding its search methods and information systems at different stages of the litigation in order to facilitate good faith negotiations. *See, e.g.*, Docket for 18-cv-182-JDL, ECF No. 11, ¶¶ 10-13 (explaining the parties' agreement that "this case, like most disputes under FOIA, will likely be resolved on cross-motions for summary judgment . . . [that] would be premature until Defendants have completed their response"; that "the Parties agree that discovery in FOIA litigation is exceedingly rare"; that the parties agreed that initial disclosures "are not customarily a part of litigation under FOIA"; and that, despite these agreements, "[t]he Parties may also *negotiate* the parameters of Defendants' searches for responsive records, including search terms that may be used and possible custodians of potentially responsive records" (emphasis added)). A voluntary agreement to negotiate in good faith regarding search parameters by an entirely distinct federal agency in unrelated litigation does not provide a basis for concluding that USCIS has a mandatory obligation under FOIA to affirmatively provide information about its search methods or information systems prior to the summary judgment stage.

circumstances," discovery is not appropriate prior to the "government filing a motion for Summary Judgment explaining the appropriateness of its decisions"); *Hall v. Cent. Intelligence Agency*, No. CV 04-814 (HHK/JMF), 2007 WL 9702202, at *2 (D.D.C. Apr. 11, 2007) ("if, in deciding the summary judgment motion, the court is convinced that the agency's affidavits establish the sufficiency of the search, then discovery into the adequacy of the agency search is not necessary").

26.     Defendant therefore requests that the Court order that:

    a.   all disputes regarding the adequacy of USCIS's search be briefed and adjudicated at the same time that any disputes regarding USCIS's claimed exemptions are briefed and adjudicated, following the completion of USCIS's production; and

    b.   the Parties identify remaining disputes about the adequacy of USIC's search in the Joint Status Report to be filed within 60 days after the completion of production and that the Parties' proposed summary judgment briefing schedule account for any such disputes in terms of proposed deadlines and page limits.

***Plaintiff's Position***

27. The Parties' dispute over the adequacy of the agency's search should be resolved promptly—and not delayed based on the mere possibility of future disputes regarding redaction. Defendant's proposal to delay adjudication of the Parties' only known dispute is at odds with basic FOIA law and with judicial economy.

28. As an initial matter, the parties have a live dispute regarding the adequacy of USCIS's search for documents. It is the Plaintiff's position that USCIS's refusal to

complete any search for several of the requests is improper. *See supra* ¶ 16. For instance, the agency has reportedly refused to search for notices of approval, denial, and other decisions in asylum cases, *see* FOIA Request at 4, ECF No. 1-1, even though these documents qualify as "orders . . . made in the adjudication of cases" that must be "available for public inspection." *See* 5 U.S.C. § 552(a)(2). Additionally, USCIS has provided no reason why it was unable to locate any responsive records for some of the requests. *See supra* ¶¶ 16-17.

29. **Basic principles of FOIA law support promptly resolving the Parties' existing dispute over search adequacy.** A court with jurisdiction over a FOIA case has authority to review whether documents have been improperly withheld, and, if so, to order their production. *See* 5 U.S.C. § 552(a)(4)(B) (describing the District Court's jurisdiction to order disclosure of "improperly withheld" documents in FOIA cases").[3] Documents may be improperly withheld if the agency has failed to conduct an adequate search for responsive documents. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 45 (D.D.C. 1998) (ordering relief where the agency's "search was inadequate, unreasonable, and unlawful under the FOIA").

30. In cases like this one—in which the agency failed to produce any documents by the time the complaint is filed—known disputes about the search can and should be promptly resolved, even if production is not yet complete. This is because "[t]he

---

[3] The District Court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld[.]" 5 U.S.C. § 552(a)(4)(B); *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 63 (D.C. Cir. 1990) (describing the purpose of the FOIA deadlines "to allow a FOIA requester, who has not yet received a response from the agency, to seek a court order compelling the release of the requested documents," at which point the "court may then order the agency to respond to the request").

adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Dillon v. U.S. Dep't of Justice*, 444 F. Supp. 3d 67, 89 (D.D.C. 2020) (citations omitted). "The crucial issue is . . . whether the agency's search was reasonably calculated to discover the requested documents."[4] *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993).

31.  Although FOIA cases often feature disputes over the redaction or withholding of documents, 5 U.S.C. § 552(b), such disputes are not yet present here. Indeed, the Plaintiff cannot currently assess whether or not it will ultimately dispute any future redactions or withholdings by the agency.

32.  **Delaying the known dispute about search adequacy until after the close of production would violate the FOIA's promptness requirement.** Unless an exemption applies, "[t]he FOIA requires government agencies to 'make ... promptly available' to any person, upon request, whatever 'records' the agency possesses[.]" *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994) (citing 5 U.S.C. § 552). In violation of this provision, by the time the complaint was filed on November 12, 2020, the FOIA request had been languishing at the agency level for sixteen months, despite Plaintiff's efforts to exhaust all agency remedies. *See* Compl. at ¶¶17, 28-30, ECF No. 1 (D. Me. Nov. 12, 2020). Now, more than nineteen months have passed since the original FOIA request was filed. Allowing

---

[4] Indeed, this logical approach has been followed in prior FOIA cases in which the ACLU of Maine was a party. *See, e.g.*, Joint Status Report at ¶¶ 5-6, *ACLU of Maine v. U.S. Dep't of Homeland Security*, Docket No. 18-182-JDL (D. Me. Aug. 17, 2018) (describing that the parties "jointly drafted" priority searches at the outset of the case); Joint Status Report at ¶¶ 5-7, *ACLU of Maine v. U.S. Dep't of Homeland Security*, Docket No. 18-176-JDL (D. Me. Aug. 16, 2018) (addressing the parties' discussions regarding the adequacy of the search at the outset of the case).

USCIS to further delay any adjudication of its search for months on end would violate the FOIA's promptness guarantee.

33. **Judicial economy and efficiency also favor prompt adjudication of the search.** Plaintiff agrees that duplicative briefing is disfavored, *see supra* ¶ 25, but this consideration conflicts with the Defendant's requested delay. Defendant's position sets up the risk of two separate rounds of redaction briefing—one arising from the first set of potentially responsive 6,440 pages, and the second arising from the second set of production that may be ordered by the Court after resolving the dispute about the search. Defendant may argue that future rounds of production or redaction disputes are merely hypothetical —but so are any redaction disputes that *might* (but might not) arise from the first production. Adopting the Plaintiff's approach would ensure prompt resolution of the only issue currently in dispute.

34. None of the cases cited by Defendant require delay in a case like this one, in which the agency refused to produce any documents until the complaint was filed, yet sought to delay known disputes about the search until after the close of production. *See, e.g.*, *Maynard v. CIA*, 968 F.2d 547 (1st Cir. 1993) (plaintiff filed suit after receiving redacted, responsive documents); *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 248 (1st Cir. 2013) (plaintiff filed suit after the agency conducted an initial, timely search of the requested information but failed to discover any responsive documents).

35. Finally, prompt briefing on search adequacy would facilitate transparency over USCIS's existing search—information that USCIS has thus far declined to share with the Plaintiff. In FOIA litigation, the agency bears the burden of submitting affidavits explaining the search it performed, and why that search was reasonable

given the topics covered in the FOIA request and the information available to the agency. *See, e.g.*, *Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993). A satisfactory agency affidavit on these topics "should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." *Id.* (internal citation omitted). "The affidavit should additionally 'describe at least generally the structure of the agency's file system which makes further search difficult.'" *Id.* (internal citation omitted). There is no good reason to delay sharing such information, which would enable counsel and the Court to expeditiously resolve the Parties' only current dispute.

36. For these reasons, Plaintiff respectfully requests that the Court order prompt briefing on the adequacy of the search, with the following deadlines:

    a.  *30 days after the entry of the Court's order resolving Issue #3*, for Defendant to file affidavits detailing the adequacy of the search and a legal memorandum with the agency's position, and

    b. *60 days after the entry of the Court's order resolving Issue #3*, for the Plaintiff to respond with a legal memorandum regarding the adequacy of the search.

## <u>CONCLUSION</u>

37.    For these reasons, the Parties respectfully request that the Court enter a scheduling order as follows:

    a. adopting the Parties' proposed schedule for USCIS's review and production of the 6,440 pages of documents that USCIS has identified as potentially responsive to the Request, as set forth in Paragraph 11 above;

    b.  ordering the Parties to submit a joint status report 60 days after the close of document production, as set forth in Paragraph 15 above; and

    c.  deciding when the Parties should brief their dispute over the adequacy of USCIS's search,

        i.  *with Defendant requesting* that briefing on the adequacy of the search occur after the close of production at the summary judgment stage, at the same time the parties brief any disputes over redactions/withholdings, as set forth in Paragraph 26 above;

       ii.  *with Plaintiff requesting* that the Court set a deadlines for USCIS to submit affidavits describing its search and for the Parties to complete briefing on the adequacy of the search, as set forth in Paragraph 36 above.

Respectfully submitted,

HALSEY B. FRANK
United States Attorney

Dated: February 19, 2021
      Portland, Maine

<u>/s/ Ashley E. Eiler</u>
Ashley E. Eiler
Assistant United States Attorney
U.S. Attorney's Office
100 Middle Street
East Tower, 6th Floor
Portland, ME  04101
(207) 771-3244
Ashley.Eiler@usdoj.gov
*Counsel for Defendant*

Dated: February 19, 2021

<u>Emma E. Bond</u>
Emma E. Bond
Zachary L. Heiden
American Civil Liberties Union of Maine
Foundation
P.O. Box 7860
Portland, Maine 04112
(207) 619-8687
*ebond@aclumaine.org*
(207) 619-6224
*heiden@aclumaine.org*

Anna R. Welch, Esq.
Refugee and Human Rights Clinic at
University of Maine School of Law
246 Deering Avenue, 5th Floor
Portland, Maine 04102
(207) 228-8709
*anna.r.welch@maine.edu*

Julia Brown, Esq.
Immigrant Legal Advocacy Project
489 Congress Street, 3rd Floor
P.O. Box 17917
Portland, Maine 04112
(207) 780-1593
*jbrown@ilapmaine.org*

*Attorneys for Plaintiff American Civil
Liberties Union of Maine Foundation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2021, I electronically filed the foregoing using the CM/ECF system, which will send electronic notifications of such filing to all counsel of record.

<div style="margin-left:50%">

Emma E. Bond____
Emma E. Bond
American Civil Liberties Union of Maine
Foundation
P.O. Box 7860
Portland, Maine 04112
(207) 619-8687
*ebond@aclumaine.org*

</div>

16